730 So.2d 711 (1999)
Frances B. EDWARDS, Appellant/Cross-Appellee,
v.
James F. EDWARDS, Appellee/Cross-Appellant.
Nos. 97-2760, 97-3368.
District Court of Appeal of Florida, Fourth District.
January 20, 1999.
Rehearing Denied April 9, 1999.
*712 Christine E. Lamia of Becker & Poliakoff, P.A., Sarasota, for appellant/cross-appellee.
Michael E. O'Connor of Morgan, Carratt and O'Connor, P.A., Fort Lauderdale, for appellee/cross-appellant.
WARNER, J.
The former wife appeals an order of modification and enforcement wherein the court refused to order the former husband to reimburse the former wife for payments on life insurance policies which the former husband was required to maintain pursuant to the terms of the final judgment. The court also terminated the life insurance obligation, contrary to the recommendations of the special master. We reverse both rulings, as the trial court essentially overruled the general master's factual findings, and the former husband had not requested modification of the life insurance provision in his pleadings.
The former husband and wife were divorced in 1987. The final judgment, which awarded the former wife rehabilitative alimony, was reversed by this court in Edwards v. Edwards, 519 So.2d 45 (Fla. 4th DCA *713 1988)(Edwards I), with directions to award the former wife permanent periodic alimony. The former wife appealed the second judgment, and this court upheld the amount of the permanent alimony award but determined that the trial court had erred in failing to require the former husband to continue his life insurance policies for the benefit of the former wife. See Edwards v. Edwards, 559 So.2d 281 (Fla. 4th DCA 1990)(Edwards II). After Edwards II was remanded, a supplemental agreed final order was entered which required the former husband to "maintain" several insurance policies and give the former wife annual notification that the policies were in full force and effect.
In January 1996, the former husband's employment was terminated, and as a result, he petitioned the court for modification of the alimony obligation, alleging a change in employment circumstances and the former wife's own increase in income. The former wife then filed a motion to compel and for contempt, asserting that the former husband had not provided her with the required annual verification of his maintenance of the life insurance policies. In addition, she requested that the former husband reimburse her for insurance premiums which she had paid since the divorce. Prior to the dissolution, the premiums from these policies had been paid from a joint account. After the divorce, the former wife had paid the premiums herself.
Before these matters were heard by a general master, the former wife and former husband stipulated to reduce the alimony to $1 per year, which left open the possibility of increasing the former wife's alimony in the future if the former husband were to regain suitable employment. During the hearing, the former wife testified that her physical condition, which included chronic back problems and multiple sclerosis type symptoms, was adversely affecting her ability to work. However, at the time of the hearing she was earning more than the former husband. The former wife also testified to the former husband's non-payment of the insurance premiums and claimed that she had made the payments because she did not have enough money to hire a lawyer to enforce the obligation. He, on the other hand, asserted that the former wife should not be able to seek payment of the premiums because she had not done so for the years since the divorce, and because he believed that he was not responsible for the payments. At that hearing, it was the former husband's attorney who told the court that continuation of the life insurance had not been addressed by the parties, and had he known that the former husband might be required to pay life insurance premiums, which he historically had not paid, the attorney would have filed a petition to modify the judgment on this issue.
Subsequently, the general master determined that the former wife was entitled to recover from the former husband the insurance premiums she had paid, based upon this court's opinion in Edwards II and the supplemental order requiring the former husband "to maintain" these policies for the benefit of the former wife. In addition, the master concluded that the former husband should continue to keep those policies in full force; however, the master's finding was without prejudice to the former husband's filing of a petition to modify the life insurance requirement.
The former husband filed objections to the master's recommendations. In the appealed order, the trial court granted the exception that the former husband should not be required to pay the past life insurance premiums or to continue the payment of the future payments. The trial court found that "[n]ormally, "to maintain' would include payment but the parties actions [sic] and prior orders and no prior effort to collect as arrears indicate former wife has assumed obligation to pay premiums." From this order the former wife appeals.
Where a general master has been appointed for fact-finding and to recommend disposition of pending issues, the trial court is bound by the general master's factual findings unless they are not supported by competent substantial evidence or are clearly erroneous. See Zdravkovic v. Zdravkovic, 684 So.2d 822, 822 (Fla. 4th DCA 1996); Dent v. Dent, 438 So.2d 903, 904 (Fla. 4th DCA 1983). The trial court should approve the master's factual findings and recommendations *714 unless the master has "misconceived the legal effect of the evidence." Fodor v. Fodor, 379 So.2d 466, 468 (Fla. 4th DCA 1980).
While not pled by the former husband, the parties tried the issue of laches, with respect to the former wife's claim for reimbursement of life insurance premiums, by implied consent. "Laches is based upon an unreasonable delay in asserting a known right which causes undue prejudice to the party against whom the claim is asserted." Brumby v. Brumby, 647 So.2d 330, 331 (Fla. 4th DCA 1994) (citations omitted). The former wife argues that the former husband failed to prove that her delay in seeking to compel his payment of the premium arrearage caused him any prejudice. As this court further observed in Brumby:
[i]n determining whether delay constitutes a bar to a claim, the court must look to whether the delay has resulted in injury, embarrassment or disadvantage to any person, and particularly to the person against whom relief is sought, whether the delay has been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and whether, during the delay, there has occurred a change in conditions that would render it inequitable to enforce the right asserted.
Id. (citation omitted).
In the present case, the former husband's contention that he was prejudiced because he was not aware of his earlier obligation to pay such premiums is not welltaken in light of the clear language in Edwards II, 559 So.2d at 282, which stated that "the court erred in not including as part of the final judgment a requirement that [the former husband] continue [the former wife] as a beneficiary on [his life insurance policies] and that they be kept in force." Mere delay in filing an enforcement suit to pursue the arrearage does not in itself establish the prejudice necessary to support a laches defense. See Brumby, 647 So.2d at 331 (action seeking enforcement of 1969 final judgment which required payment of permanent alimony not barred by laches); Gardiner v. Gardiner, 705 So.2d 1018, 1021 (Fla. 5th DCA 1998)(enforcement action filed sixteen years after dissolution seeking alimony arrearage not precluded by doctrine of laches); cf. Dean v. Dean, 665 So.2d 244, 249 (Fla. 3d DCA 1995)(father prejudiced by mother's thirty-year delay in seeking enforcement of child support obligations where father assumed large financial obligations over thirty-year period which he would not have otherwise incurred if aware of enormous arrearage award sought by mother), rev. denied, 675 So.2d 926 (Fla.1996).
Thus, the former wife's six-year delay in seeking to enforce her claim for premium arrearage, in accordance with the dictates of Edwards II, did not in and of itself constitute the requisite prejudice to support the former husband's theory of laches. See Brumby, 647 So.2d at 331. Since the former husband has failed to articulate any other real prejudice visited upon him by the former wife's delay in seeking reimbursement for the premium arrearage, he failed to prove his affirmative defense of laches. Accordingly, we hold that the trial court erred in rejecting the general master's findings and recommendation which required the former husband to reimburse the former wife for the payment of life insurance premium arrearage, as the master had not "misconceived the legal effect of the evidence." Fodor, 379 So.2d at 468.
Because we reverse the trial court's finding that the parties' conduct negated the former husband's obligation to maintain life insurance for the former wife, we also reverse the trial court's grant of the exception to the continuing duty to provide life insurance. This issue was never raised in the pleadings, and we do not find that it was impliedly tried by the general master, as the master's order specifically notes that the issue may be addressed in a petition for modification. The trial court's reduction of the former wife's alimony to $1 per year pursuant to the parties' agreement, constitutes a recognition that the former wife has a need for alimony, but the husband does not have the present ability to pay. The wife also testified to a continuing need for permanent alimony due to her ongoing health problems. Moreover, if the former husband were to *715 terminate these long held policies at his age, he may have greater difficulty in obtaining affordable insurance, should there arise a future need to secure an increased alimony obligation upon a change in the husband's circumstances. See § 61.08(3), Fla. Stat. (1995). For these reasons, it does not follow that the agreed reduction of alimony as a matter of law terminates all obligation to maintain life insurance for the former wife. This matter is best left to the trial court to assess all of the factors which might impact on such a determination. We reverse and remand to reinstate and approve the recommendations of the general master.
The former wife also makes a claim that the court abused its discretion in denying her exception to the general master's report with respect to the assessment of attorney's fees. We find no error on this point and affirm.
Reversed in part; affirmed in part.
STONE, C.J., and GROSS, J., concur.