958 So.2d 968 (2007)
K.E., Mother of S.C., a Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, et al., Appellees.
No. 5D06-3294.
District Court of Appeal of Florida, Fifth District.
May 14, 2007.
H. Kyle Fletcher, Jr., of Fletcher Law Firm, Oviedo, for Appellant.
*969 Charles D. Peters, Orlando, for Appellee, Department of Children and Families.
Hillary Kambour, of Guardian ad Litem Program, Orlando, for Appellee, Guardian Ad Litem Program.
Deborah M. O'Brien, of Deborah M. O'Brien, P.A., of Lowis & Gellen, LLP, Altamonte Springs, for Appellee, V.C., Father of S.C.
GRIFFIN, J.
K.E. ["Mother"] appeals the trial court's order placing her daughter, S.C., in the sole custody of the child's father, V.C. ["Father"], and terminating jurisdiction over the dependency case. Because we find that the procedure followed was defective, we reverse.
Mother has a history of drug use. On the night of September 8, 2005, Mother left S.C. and her two-year-old niece unattended overnight while she was out using drugs and alcohol. S.C. was taken into protective custody.[1] The Florida Department of Children and Families ["DCF"] filed a petition to adjudicate S.C. dependent.[2] On November 22, 2005, Mother consented to the petition.[3] S.C. was initially placed with friends, and thereafter was moved several times into different placements.
DCF's proposed case plan for Mother recited that it was needed because "[t]he child was exposed to illegal substances and there was inadequate supervision causing threatened harm to the child." The goal of the plan was "reunification," and the date fixed to reach the goal was September 12, 2006. On January 30, 2006, the trial court adjudicated S.C. dependent as to Mother and accepted the proposed case plan.
Meanwhile, on December 12, 2005, Father, who was living in Puerto Rico, entered a denial to the Petition for Dependency. On February 9, 2006, a dependency hearing was held with respect to Father, at the conclusion of which the trial court found that DCF had failed to prove its case against Father and dismissed the petition for dependency as to him. Shortly thereafter, the trial court granted Father temporary legal custody and allowed Father to take S.C. with him to Puerto Rico to live with him and his parents.[4]
On April 10, 2006, the trial court heard arguments on Father's motion for sole custody and to terminate jurisdiction. Mother objected to the motion, asserting that she was in the process of substantially complying with her case plan and that *970 adequate time had not passed for her to complete the case plan. Further, Mother argued that S.C. did not want to go to Puerto Rico and that her adjustment to living there would be difficult because she did not speak Spanish. Father replied that he was entitled to custody unless it would be detrimental to the health and well-being of the child. He also argued that it would not be detrimental to allow her to move to Puerto Rico because he would enroll S.C. in a bilingual school there, S.C. would be taught Spanish, and he has a lot of family support in the area. DCF supported Father's motion, noting that Mother had just recently begun completing her case plan and that she was not in substantial compliance at that time.
The trial court granted Father's motion. No finding was made relating to whether Mother was in substantial compliance with her case plan or whether Mother posed a threat to the welfare of the child.
On appeal, Mother principally contends that it was error to permanently place the child with the Father and terminate jurisdiction while she was in the process of complying with her case plan and the time for performance had not expired. Although we conclude, based on our analysis of Chapter 39, Florida Statutes, and our prior case law, that the correct procedure was not followed below, Mother is not correct that the trial court lacks the power to terminate jurisdiction prior to expiration of the original date for completion of her case plan.
It is apparent that the trial court was attempting to follow the dictates of chapter 39; however, the operation of its various provisions in a case where there is a non-offending parent is quite unclear.
Section 39.521(3)(b), Florida Statutes (2006), provides:
Section 39.521, Disposition hearings; powers of disposition.
(3) When any child is adjudicated by a court to be dependent, the court shall determine the appropriate placement for the child as follows:
. . . .
(b) If there is a parent with whom the child was not residing at the time the events or conditions arose that brought the child within the jurisdiction of the court who desires to assume custody of the child, the court shall place the child with that parent upon completion of a home study, unless the court finds that such placement would endanger the safety, well-being, or physical, mental, or emotional health of the child. . . . If the court places the child with such parent, it may do either of the following:

1. Order that the parent assume sole custodial responsibilities for the child. The court may also provide for reasonable visitation by the noncustodial parent. The court may then terminate its jurisdiction over the child.
2. Order that the parent assume custody subject to the jurisdiction of the circuit court hearing dependency matters. The court may order that reunification services be provided to the parent from whom the child has been removed, that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court jurisdiction, or that services be provided to both parents, in which case the court shall determine at every review hearing which parent, if either, shall have custody of the child. The standard for changing custody of the child from one parent to another or to a relative or another adult approved by the court shall be the best interest of the child.
*971 (Emphasis added). Thus, according to section 39.521(3)(b), once the trial court decides to place the dependent child with a non-offending parent, it may do one of two things: it may order the non-offending parent to assume sole custodial responsibility and terminate its jurisdiction over the child, or the court may place the child with the non-offending parent, provide services to one or both parents, and retain jurisdiction to determine the better placement for the child as the dependency progresses. Unclear is whether the court can proceed under subsection (3)(b)2. and then revert to (3)(b)1.
A trial court's decision to proceed under subsection 2. appears to have several consequences. This court has said that once reunification services are provided to the offending parent pursuant to a case plan, the trial court may not simply discard the case plan prior its expiration. D.S. v. Dep't of Children & Families, 900 So.2d 628, 631-32 (Fla. 5th DCA 2005) ("We find error in this case that the case plan for T.A. and D.B. was closed prior to the expiration of the 12 month period during which the mother had to comply with the terms of the case plan."). Also, an offending parent who has substantially complied with a case plan that has the goal of reunification is entitled to reunification with the dependent child, absent a determination that reunification would be detrimental to the child. D.G. v. Dep't of Children & Families, 903 So.2d 1042 (Fla. 5th DCA 2005);[5]R.H. v. Dep't of Children & Families, 948 So.2d 898, 900 (Fla. 5th DCA 2007) ("The mother would be entitled to reunification with the children if she substantially complied with her case plan and if reunification would not be detrimental to the children."); §§ 39.522(2) and 39.701(9)(b), Fla. Stat. (2006).
In a situation where the offending parent has not yet substantially complied with the case plan and the time for such compliance has not yet expired, if any party or the court concludes that reunification with the offending parent would no longer be appropriate, the proper procedure to follow is to amend the case plan. See R.H., 948 So.2d at 900 ("Alternatively, the court may consider a motion to amend the case plan so as to change the case plan goal from reunification of the children with the mother, to placement of one or both of the children with their respective fathers.").
The relationship between sections 39.522(2) and 39.521(3)(b), Florida Statutes, was recently clarified by this court in R.H. There, two children were adjudicated dependent as to their mother and placed in the temporary custody of their respective, non-offending fathers on November 16, 2005. The mother entered into a case plan with the goal of reunification and a goal achievement date of August 2, 2006. The mother filed a motion for reunification, which was heard on March 6, 2006. After receiving evidence that the mother was not in substantial compliance with her plan, the trial court denied the motion. The two fathers then made ore tenus motions to close the case. The trial court granted the motions and awarded permanent custody of the two minor children to their respective fathers.
On appeal, this Court found a due process error based on the trial court's decision *972 to close the case without prior notice that permanency would be decided at the hearing. R.H., 948 So.2d at 899. Further, this Court found that:
The trial court's order was also erroneous because it had the effect of modifying the case plan. Florida Rule of Juvenile Procedure 8.400(b)(2) provides that if any party objects to the amendment of the case plan, the court must conduct an evidentiary hearing. In the present case, the mother was never given the opportunity for an evidentiary hearing, although she clearly objected to this de facto amendment to the case plan.
Id. at 899-900. Then, in light of the finding that the mother was not in substantial compliance with her case plan, this court said:
On remand, the trial court may choose to give the mother additional time to complete her case plan. The mother would be entitled to reunification with the children if she substantially complied with her case plan and if reunification would not be detrimental to the children. D.G.

Alternatively, the court may consider a motion to amend the case plan so as to change the case plan goal from reunification of the children with the mother, to placement of one or both of the children with their respective fathers. § 39.6013, Fla. Stat. (2005). A case plan is not required to have a goal of reunifying a child with the parent from whom the child was removed. . . .
No case plan amendment shall take place absent proper notice and the opportunity for an evidentiary hearing should a party object to the proposed amendment. Fla. R. Juv. P. 8.400(b).
Id. at 900 (emphasis added); see also § 39.6013(2), Fla. Stat. (2006).
Section 39.6013, Florida Statutes (2006), and Florida Rule of Juvenile Procedure 8.400(b) govern the process of case plan amendment. See § 39.6013(1), Fla. Stat. (2006) ("After the case plan has been developed under s. 39.6011, the tasks and services agreed upon in the plan may not be changed or altered in any way except as provided in this section."). In pertinent part, sections 39.6013(2), (4)(b) and (4)(c), Florida Statutes (2006), provide:
(2) The case plan may be amended at any time in order to change the goal of the plan. . . .
. . . .
(4) The case plan may be amended by the court or upon motion of any party at any hearing to change the goal of the plan . . . if there is a preponderance of evidence demonstrating the need for the amendment. The need to amend the case plan may be based on information discovered or circumstances arising after the approval of the case plan for:
. . . .
(b) The child's need for permanency, taking into consideration the child's age and developmental needs;
(c) The failure of a party to substantially comply with a task in the original case plan, including the ineffectiveness of a previously offered service. . . .
(Emphasis added). Further, in relevant part, rule 8.400(b), Florida Rule of Juvenile Procedure, provides:
(1) The case plan may be amended by:
(A) the parties at any time provided agreement is unanimous, and the amendment is approved by the court;
(B) the court on motion of a party after notice to all other parties; or
(C) the court.
(2) If any party objects to the amendment of the case plan, the court must conduct a hearing allowing each party to *973 present evidence and information as permitted in rule 8.340(a).
(3) Any amendment granted by the court must be based on competent evidence.

(Emphasis added). If a party objects to a proposed amendment to the case plan rejecting the goal of reunification, an evidentiary hearing must be held to determine whether the need for the amendment is established by the preponderance of evidence. See § 39.6013(1), Fla. Stat. (2006); R.H., 948 So.2d at 899-900. We accordingly reverse the order of permanent placement and termination of jurisdiction and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
THOMPSON and MONACO, JJ., concur.
NOTES
[1] The record indicates that S.C. had previously been removed from Mother's care in 2001 as a result of domestic violence and substance abuse issues and that reunification had occurred in 2003.
[2] The petition alleged that Father's address was unknown and that he had abandoned her, failed to support her, failed to communicate with her, and failed to fulfill his parental responsibilities.
[3] The consent she entered into included the following language:

13. That should the Court find that I have substantially complied with the Case Plan, the Child/Children shall be returned to my custody at or before such Review Hearings if the Court is satisfied that reunification will not be detrimental to the Child's/Children's safety or well-being.
14. That if the Child/Children has/have been out of my home for a minimum of twelve months, and I have not complied with the Case Plan, DCF may initiate termination of parental rights proceedings or move for long-term placement of the Child/Children with a relative.
(emphasis added).
[4] A favorable home study on the paternal grandparents' home had been completed in Puerto Rico.
[5] This Court followed D.S. in D.G. where "the lower court changed custody of the minor child to the child's father pursuant to section 39.521(3)(b), Florida Statutes (2005)." D.G., 903 So.2d at 1042. At the time of the order, the mother had substantially complied with her case plan, which had the goal of reunification. This court held that, under these circumstances, "the court's change in custody was erroneous in the absence of a determination that reunification would be detrimental to the child." Id.