BLANC, PETER D., Associate Judge.
 

 The Father, M.I., appeals the termination of his parental rights to the child, W.S. The Department of Children and Families takes the position that the trial court was correct in its termination, but that it erred in changing the case plan goal from permanent guardianship to adoption. The Guardian ad Litem argues that the trial court properly amended the case plan, terminated the Father’s parental rights, and placed the child for adoption. We agree with the Guardian ad Litem and affirm.
 

 
 *880
 
 On August 25, 2007, the Department sheltered the child with his maternal grandparents, because he was found improperly restrained in the back seat of a car being driven by the Father while both the Father and the Mother were intoxicated. Both parents were charged with child neglect, and the Father was also charged with DUI. The Mother consented to a case plan with a completion date of October 1, 2008, which she substantially completed. However, the Mother eventually surrendered her parental rights.
 

 The Father also consented to a case plan with a completion date of October 1, 2008. The Father’s case plan originally listed the goal of reunification and the concurrent goal of adoption. It also contained several warnings to the parents under a section labeled “NOTICE TO PARENT(S),” including the following:
 

 The Case Plan may be revised if circumstances change.
 

 [[Image here]]
 

 YOU CAN LOSE ALL OF YOUR RIGHTS TO YOUR CHILD(REN) FOREVER (THIS IS CALLED TERMINATION OF PARENTAL RIGHTS OR TPR)
 

 [[Image here]]
 

 If your progress is not satisfactory at any time, the court may order the Department to start Termination of Parental Rights proceedings.
 

 [[Image here]]
 

 YOUR FAILURE TO SUBSTANTIALLY COMPLY WITH THE CASE PLAN MAY RESULT IN THE TERMINATION OF PARENTAL RIGHTS, AND A MATERIAL FAILURE TO SUBSTANTIALLY COMPLY MAY RESULT IN THE FILING OF A PETITION FOR TERMINATION OF PARENTAL RIGHTS SOONER THAN THE COMPLIANCE PERIODS SET FORTH IN THE CASE PLAN....
 

 [[Image here]]
 

 If you refuse to sign [the Case Plan], the court may order you to comply with this Case Plan after finding that the child is dependent.
 

 The Father’s case plan tasks included requirements that he attend a parenting class, that he submit to drug abuse evaluation and follow the recommendations, and that he submit to a domestic violence / anger management evaluation and follow the recommendations. On October 31, 2007, the parties amended the original case plan by striking the concurrent goal of adoption and handwriting a new concurrent goal of permanent guardianship. The amendment was initialed by all parties. On November 7, 2007, both parents consented to dependency, and the trial court adjudicated the child dependent and accepted the case plans.
 

 After the Father was released from incarceration and placed on probation for the DUI and child neglect charges, he consistently visited the child. During the visits, he demonstrated love and a willingness to parent. However, the Father’s circumstances deteriorated — he was unable to maintain a job, he was involved in a domestic violence incident with the Mother, and he eventually stopped attending his substance abuse and domestic violence / anger management classes. He ceased contacting the Department and visiting the child, and he stopped attending his scheduled court dates.
 

 On November 17, 2008, which is notably after the case plan’s completion date of October 1, 2008, the trial court conducted a permanency hearing which the Father failed to attend although his attorney was present. At the hearing, the Department announced its intention to file a petition for termination of parental
 
 *881
 
 rights. On November 19, 2008, the general magistrate’s report recommended that the court order the Department to file a petition for termination of parental rights and an adoption case plan within thirty days. On December 1, 2008, the trial court entered an order adopting the magistrate’s report. The Department filed a proposed case plan with the goal of adoption on December 12, 2008; however, the Department did not file the petition for termination of parental rights until February 19, 2009.
 
 [1]
 

 Meanwhile, in mid-November of 2008, the Father’s probation officer alleged that the Father violated his probation and a warrant was issued for the Father’s arrest based upon ten separate violations. The Father absconded from probation and was later arrested in Palm Beach County for battery on a law enforcement officer, resisting arrest with violence, giving a false identification to law enforcement, and violation of probation. A caseworker from the Department visited the Father in jail, and the Father indicated that he loved his child but wanted to serve jail time rather than complete probation. The Father was sentenced to eighteen months’ incarceration, thereby impeding his ability to work on his case plan. He did attend Alcoholics Anonymous and Narcotics Anonymous meetings while incarcerated.
 

 On June 29, 2009, the trial court conducted a termination of parental rights trial. The Department presented competent substantial evidence that termination was the least restrictive means of protecting the child and adoption was in the best interest of the child. The trial court entered an order terminating the Father’s parental rights to the child based upon case plan noncompliance.
 

 On appeal, the Father concedes case plan noncompliance, but argues that the case plan is a contract and the Department is bound by the negotiated goal of permanent guardianship since the Father did not substantially comply with the case plan. The Department argues-that it was fundamentally unfair for the trial court to amend the Father’s case plan goal. However, section 39.6013, Florida Statutes (2009) expressly allows the amendment of case plan goals by the court at any time:
 

 (2) The case plan may be amended at any time in order to change the goal of the plan....
 

 [[Image here]]
 

 (4) The case plan may be amended by the court or upon motion of any party at any hearing to change the goal of the plan ... if there is a preponderance of evidence demonstrating the need for the amendment. The need to amend the case plan may be based on information
 
 *882
 
 discovered or circumstances arising after the approval of the case plan for:
 

 [[Image here]]
 

 (b) The child’s need for permanency, taking into consideration the child’s age and developmental needs;
 

 (c) The failure of a party to substantially comply with a task in the original case plan....
 

 Additionally, section 39.621, Florida Statutes (2009) addresses the amendment of case plan goals at the permanency hearing: “The purpose of the permanency hearing is to determine ... whether modifying the current goal is in the best interest of the child.” § 39.621(1), Fla. Stat. (2009). The plain language of sections 39.6013 and 39.621 makes clear that a trial court may change the case plan goals. Moreover, the warnings in the case plan provided notice that parents may lose their parental rights if they fail to complete the case plan goals.
 

 Furthermore, we note that the theory espoused by the Father, which was not challenged by the Department, that both the trial court and the Department are bound by the case plan’s concurrent goal of permanent guardianship is directly contrary to law. The facts of this case clearly exemplify the policy reasons behind the court’s authority to amend the case plan goal at any time. The case plan is for the benefit of the child and the goal is permanency. When a parent’s performance demonstrates not only failure to comply with a case plan, but also that the child’s needs are best served by a change in goal, the trial court must have discretion to amend the goal to meet the needs of the child. To do less would put the interest of the parent ahead of the child.
 

 Next, we conclude that, by amending the case plan’s concurrent goal to adoption based upon the preponderance of the evidence standard in section 39.6013, the trial court did not abuse its discretion. As part of the analysis in the termination of parental rights, a trial court must choose the permanency option that is the least restrictive means of protecting a child from serious harm.
 
 B.C. v. Fla. Dep’t of Children and Families,
 
 887 So.2d 1046, 1052 (Fla.2004). In determining whether termination of parental rights is necessary to protect a child from serious future harm, a court may take into account all relevant evidence, including evidence of past parent-child contact.
 
 Id.
 
 The best interest of the child is the primary consideration in determining the permanency goal, as section 39.621(5) prescribes.
 

 Here, the trial court entered an order terminating the Father’s parental rights. The trial court’s analysis included an examination of the Father’s and Mother’s past relationship troubles, the Father’s anger control problem, and the Father’s abuse of alcohol and illegal substances. The court reviewed the Father’s initial commitment to the case plan, and noted in contrast that he suddenly “fell off the radar” and absconded from probation, and that he chose incarceration over probation. The court noted that the Father never paid child support and had not sent letters or cards to the child. The court considered testimony of the Dependency Case Manager and the Guardian ad Litem that the termination of parental rights of both parents was in the best interest of the child and that the child should be allowed to be adopted. The Guardian also testified that the child would not be harmed by the termination of his parents’ rights because he had not formed a significant bond with either parent and had formed a strong and loving bond with his maternal grandparents. Based upon this analysis of evidence, the trial court did not abuse its discretion by determining by a preponder-
 
 *883
 
 anee of the evidence that changing the case plan goal to adoption was in the best interest of the child or by finding that termination of the Father’s parental rights was the least restrictive means of protecting the child and providing permanency.
 

 Affirmed.
 

 TAYLOR and CIKLIN, JJ„ concur.
 

 [1]
 

 . We recognize that the trial court did not enter an order approving the December 12, 2008 case plan until after the termination of parental rights trial. Additionally, on January 27, 2009, the Judicial Review Social Study Report / Case Plan Update still referred to the previous goal of permanent guardianship, and the subsequent magistrate's report, which the trial court adopted, also referred to the goal of permanent guardianship. However, the Father never objected to the discrepancies in the forms, and the record clearly demonstrates that all parties knowingly participated in the termination proceedings that followed. These proceedings included the termination of parental rights advisory hearing in March of 2009, which the Father attended. Furthermore, the trial court’s order on December 1, 2008 adopting the magistrate's report recommending the goal of adoption sufficed to amend the case plan goal.
 
 See C.W. v. Dep't of Children and Families,
 
 944 So.2d 481, 483 (Fla. 5th DCA 2006) (concluding that the trial court’s approval and adoption of a magistrate's report that changed the case plan goal to adoption sufficed to amend the case plan goal).