ORFINGER, J.
A.L., the mother of S.L., J.L., M.L. and E.L., appeals from a final order terminating jurisdiction over this dependency action and permanently placing her children with their non-offending father.
This dependency action began when the Department of Children and Families (“DCF”) sheltered A.L.’s four children following a domestic violence incident. According to the shelter petition, concern existed that the mother, who was unemployed, had been evicted from a rooming house that she shared with the children. Due to the possibility that the mother would flee to Mexico with the children, DCF asked the court to place the children with the father. A guardian ad litem was appointed for the children and counsel was appointed for the mother and the father.[1]
The mother consented to the dependency petition without admitting the allegations of the petition, believing it to be in the best interests of the children. The *326 court ordered custody with the father pending a home study, and supervision and services to the mother and children. A case plan was formulated on October 6, 2009, requiring the mother to address her parenting skills, obtain counseling, employment, housing and other tasks with a completion date of June 16, 2010.
The mother’s counsel reviewed the tasks with the mother and DCF worked with the mother to provide referrals and to assist her with her tasks. On October 20, 2009, a status report was submitted, reflecting no problems with the mother’s supervised visits and that the mother was obtaining legal assistance regarding her immigration status. A December 17, 2009, judicial review/permanency report indicated the mother’s partial compliance with the case plan that “reunification continues to be the goal,” and that “the children are thriving with the father.” The order entered in connection with the December 17, 2009, permanency hearing reflected that the goals were reunification as well as to “maintain and strengthen.”
At the subsequent March 11, 2010 status hearing, the father requested that supervision and jurisdiction be terminated, and that the children remain in his sole custody. The father contended that the mother had not yet completed her case plan, and appeared unable to complete it by the June 16, 2010, expiration date. The mother argued that she should be allowed the full nine months to complete the case plan. An unidentified person attending the hearing advised the magistrate that when DCF enters into a “maintain and strengthen” case plan, it has the option of not providing the mother with a reunification plan. The mother told the magistrate that she had been working toward reunification and completing the tasks assigned to her. Further, she argued that if the case plan did not have reunification as a goal, DCF was required to show that reunification was not in the children’s best interests.
In his report, the magistrate found that the children had been placed with the father at least six months. Further, the magistrate determined that the mother was making progress, but lived in a single room that was inadequate to house four children, made minimum wage, and functioned at a borderline intelligence level, which created grave doubts that she would be able to implement changes in her life necessary to remedy the circumstances that led to dependency. The magistrate noted the psychological report recommended that the mother participate in mental health services, and determined that the mother would not likely achieve suitable housing or complete the necessary mental health services within the specified nine months from the shelter date, and that reunification with the mother would be detrimental to the children without these services. The magistrate further found that the mother and father’s twelve-year-old daughter was seven months pregnant, that the petition alleged that the mother knew the twelve-year-old child was dating a “24-year old,” who was the older brother of the mother’s former paramour. Lastly, the magistrate found that the children had achieved permanency while in the father’s custody. As a result, the magistrate recommended that supervision and jurisdiction be terminated.
The mother filed exceptions to the magistrate’s report and recommendations. The mother argued that “maintain and strengthen” is a “reunification” goal, and that she should have the full nine months to achieve reunification. The mother asked the trial court to reject the report and recommendations and continue the case to allow her to complete the case plan tasks. After a hearing, the court entered an order ratifying and approving the re *327 port and recommendation of the magistrate.
On appeal, the mother challenges the order terminating jurisdiction, claiming it fails to comply with Chapter 39, Florida Statutes (2009), as it relates to permanency determinations. Section 39.621, Florida Statutes, requires that permanency hearings be held at specified times. The statute explains that “[t]ime is of the essence for permanency of children in the dependency system” and that “[t]he purpose of the permanency hearing is to determine when the child will achieve the permanency goal or whether modifying the current goal is in the best interest of the child.” Permanency goals under the statute, in order of preference, include reunification, adoption, permanent guardianship, permanent placement with a fit and willing relative or placement in another planned permanent living arrangement. See § 39.621(2)(a)-(e), Fla. Stat. (2009). Here, the ease plan establishes a permanency goal of “maintain and strengthen,” not one of the statutory options.
It is not clear what the case plan goal of “maintain and strengthen” means. DCF took the position below that such a goal allows it the option of not providing the offending parent with a reunification plan. The mother, however, observes that “maintain and strengthen” is not a permanency goal recognized in section 39.621(2)(a)-(e). She notes that the December 17, 2009, judicial review permanency report states the permanency goal as “maintain and strengthen” but continues as to each child that “[tjermination of parental rights/adoption is not in the best interest of the child as reunification continues to be the goal.” The December 17, 2009, permanency order states the permanency goal as “reunification — maintain & strengthen.”
DCF counters that: (1) “maintain and strengthen” is equivalent to the permanency goal recognized in section 39.621(2)(d) of “permanent placement with the fit and willing relative”; (2) concurrent permanency goals may be pursued, here, either reunification as to the mother or maintain and strengthen as to the father; and (3) once one of these goals was reached, here, permanency with the father, DCF was under no obligation to continue with the other goal. DCF claims at that point, the trial court could terminate supervision in accordance with section 39.521(3)(d), Florida Statutes (2009) (“Protective supervision shall be terminated by the court whenever the court determines that permanency has been achieved for the child, whether with a parent, another relative, or a legal custodian, and that protective supervision is no longer needed.”).
At a minimum, it does not appear that DCF and the mother were operating with the same understanding as to the permanency goal. While DCF may be correct that under section 39.621 multiple permanency goals may be pursued, such goals must be clearly enunciated to those involved in the dependency action. DCF understandably emphasizes the directive in section 39.621(1) that “time is of the essence for permanency of children in the dependency system” but the utilization of vague and uncertain permanency goals as here, does not further the efficient and proper disposition of dependency proceedings.
The mother undertook to complete the tasks in the case plan. The case plan had a completion date of June 16, 2010. By the March 11, 2010 hearing, the mother was progressing well. While some tasks still needed to be completed, the mother had made meaningful progress in the five months since the case plan had been adopted. Despite this progress and the *328 plan’s stated completion date of June 16, 2010, the mother was not given until then to reach compliance.
In K.E. v. Department of Children & Families, 958 So.2d 968 (Fla. 5th DCA 2007), this Court held that an offending parent who has substantially complied with a case plan that has the goal of reunification is entitled to reunification with the dependent child absent a determination that reunification would be detrimental to the child. See also M.M. v. Dep’t of Children & Families, 29 So.3d 1200 (Fla. 5th DCA 2010). Where the offending parent has not yet substantially complied with the case plan and the time for such compliance has not expired, if a party or the court concludes that reunification with the offending parent would no longer be appropriate, the proper procedure is to amend the case plan in accordance with section 39.6013, Florida Statutes, and Florida Rule of Juvenile Procedure 8.420(b). K.E., 958 So.2d 968; see, e.g., R.N. v. Dep’t of Children & Families, 25 So.3d 697 (Fla. 5th DCA 2010). That was not done here.
The magistrate did not find that the mother failed to substantially comply with the case plan, warranting an amendment to the case plan goal. Cf. M.I. v. Dep’t of Children & Families, 45 So.3d 878 (Fla. 4th DCA 2010) (holding that permanency goal properly changed where parent demonstrated failure to comply with case plan). Nor did the magistrate find that reunification would be detrimental to the children if the mother complied with the terms of the case plan, only that reunification would be detrimental if she did not comply with the case plan.
The procedure utilized in this case was confusing and counter to the mother’s reasonable understanding of the case plan. The procedures utilized in a dependency action must comport with due process principles. See, e.g., Dep’t of Children & Family Servs. v. M.L., 984 So.2d 606 (Fla. 3d DCA 2008). DCF asserts lack of significant prejudice to the mother, who did not lose her parental rights and who can move for modification if and when she achieves all the goals of the case plan. See Fla. R. Juv. P. 8.430(b). However, even if the mother could satisfy the standards for modification, the possibility of a future modification is not an excuse for utilizing confusing goals and procedures and failing to allow a parent a reasonable opportunity to complete a case plan in the absence of evidence that such opportunity would be fruitless or would be detrimental to the best interests of the children.
For these reasons, we reverse the order terminating jurisdiction and remand this matter to the trial court for a determination of whether an amendment to the permanency goal of the case plan was necessary, if not, the mother’s level of compliance with the case plan, and ultimately, what permanency disposition is appropriate.
REVERSED and REMANDED.
LAWSON and EVANDER, JJ., concur.

. The parties also were provided with the assistance of a Spanish interpreter.