DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**N.A.,** the mother,
Appellant,

v.

**DEPARTMENT OF CHILDREN & FAMILIES** and
**GUARDIAN AD LITEM PROGRAM,**
Appellees.

No. 4D18-3374

[March 20, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Charles A. Schwab, Judge; L.T. Case No. 562018DP000187.

Antony P. Ryan, Regional Counsel, and Paul O'Neil, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Andrew Feigenbaum of Children's Legal Services, West Palm Beach, and Laura J. Lee of Florida Statewide Guardian ad Litem Program, Tallahassee, for appellees.

GERBER, C.J.

The mother appeals from the circuit court's "Order of Adjudication, Disposition, Acceptance of Case Plan, and Termination of Supervision and Jurisdiction." The order required the mother to complete a "maintain and strengthen" case plan, even though the order permanently placed the child with the father and terminated jurisdiction.

The mother argues that the circuit court's order was improper as a matter of law for two reasons: (1) by placing the child with the father and terminating jurisdiction, the circuit court lacked any statutory authority to require the mother to complete a case plan; and (2) if the circuit court's intent was to require the mother to complete a case plan after having placed the child with the father, then the circuit court could not require the mother to complete a "maintain and strengthen" case plan.

We agree with both arguments and reverse.

## *Procedural History*

The Department filed a shelter petition seeking to remove the child from the mother's custody due to domestic violence occurring in the child's presence between the mother and her boyfriend, as well as the other issues regarding the mother's behavior.

The circuit court entered an order finding probable cause to remove the child from the mother's custody. The circuit court later entered an order placing the child with the biological father, who lived elsewhere in the state.

The Department filed a dependency petition based on the same allegations contained in the shelter petition. The mother executed a written consent to the dependency petition.

The Department proposed a "maintain and strengthen" case plan for the mother, even though the child had been placed with the father. The case plan included five tasks: (1) complete parenting classes; (2) maintain safe and stable housing; (3) complete domestic violence therapy and education; (4) complete a mental health evaluation and any recommended treatment; and (5) visit her case manager at least once per week.

The circuit court held a dependency hearing. At the hearing, the Department presented the "maintain and strengthen" case plan. The mother objected to the "maintain and strengthen" case plan, and instead requested reunification as the case plan's goal.

At the end of the dependency hearing, the circuit court entered an order adjudicating the child dependent, directing that the child's placement continue with the father, and permitting the mother to have supervised visitation with the child. The circuit court's order noted: "The Case Plan is currently under development and will be submitted and presented to the Court for acceptance at a later date." The circuit court also requested the parties to provide case law regarding the Department's case plan goal and termination request.

At a later "case plan acceptance" hearing, the Department requested the circuit court to enter a final order: (1) permanently placing the child with the father, (2) terminating jurisdiction, and (3) requiring the mother to complete the "maintain and strengthen" case plan.

The mother again objected to the Department's request. The mother argued that Chapter 39, Florida Statutes (2018), mandated that if the circuit court intended to permanently place the child with the father and terminate jurisdiction, then the circuit court could not require the mother to complete a case plan which the circuit court was not overseeing. The mother further argued that if the circuit court intended to order the mother to complete a case plan, then the case plan's goal must be reunification, not "maintain and strengthen," and the court must keep jurisdiction to oversee the case plan.

The circuit court initially appeared to understand the mother's argument. The circuit court asked the Department's counsel:

> [I]f we go ahead and use . . . what your interpretation of the statute is, mom goes ahead and completes a case plan, everything has been closed out, but there really is no bite to maintain and strengthen because now mom has to go back in, fight out in family court whether or not she should have her child back.

The Department responded that if the circuit court permanently placed the child with the father, then Chapter 39 mandated the circuit court must terminate jurisdiction. The Department later argued that the reason for ordering the mother to complete the "maintain and strengthen" case plan, even if the circuit court permanently placed the child with the father and terminated jurisdiction, was as follows:

> [I]n order for mom to have a change in family court, she has to be able to establish a substantial change in circumstances. When she petitions family court for modification, she has case plan in hand and says, here, I've now remedied the circumstances that caused the Department to get involved in my life to begin with. That's the substantial change in circumstances . . . what she needs to be able to get into family court. So it is really important to have a good, well thought out case plan at the time the Court terminates supervision and jurisdiction.

The circuit court apparently was convinced by the Department's argument. The circuit court orally stated that it was going to permanently place the child with the father, terminate jurisdiction, and yet order the mother to complete the "maintain and strengthen" case plan. Similar to the Department, the circuit court told the mother:

> And what does that ultimately mean at this point in time, mom?  Well, here's the deal, [the] Department's gonna be out of your life, okay.  They've made the referral [for services], you're doing all of your things.  Complete those things and as silly as it might sound, you're gonna walk from this courtroom to the courtroom across the hall or in 60 days this courtroom [and] . . . file for reunification with your child.

The circuit court later codified its oral pronouncement in an "Order of Adjudication, Disposition, Acceptance of Case Plan, and Termination of Supervision and Jurisdiction."

## *This Appeal*

This appeal followed.  The mother argues that the circuit court's order was improper as a matter of law for two reasons:  (1) by placing the child with the father and terminating jurisdiction, the circuit court lacked any statutory authority to require the mother to complete a case plan; and (2) if the circuit court's intent was to require the mother to complete a case plan after having placed the child with the father, then the circuit court could not require the mother to complete a "maintain and strengthen" case plan.

Ordinarily, "[a] termination of protective supervision order is reviewable under an abuse of discretion standard."  *T.S. v. Guardian ad Litem*, 49 So. 3d 341, 341 (Fla. 4th DCA 2010).  However, because it appears the circuit court's order, and the mother's arguments on appeal, both rest upon the interpretation of Chapter 39's requirements, our review is de novo.  *See State, Dep't of Children & Families v. B.D.*, 102 So. 3d 707, 709 (Fla. 1st DCA 2012) (statutory interpretation of section 39.621 is reviewed de novo).

Applying de novo review, we agree with the mother's arguments on appeal.  We address each argument in turn.

### 1. *After the Circuit Court Removed the Child from the Mother, the Circuit Court Lacked Statutory Authority to Both Terminate Jurisdiction and Order the Mother to Complete a Case Plan*

When a court decides to place a dependent child with the non-offending parent, Chapter 39 provides a court with two options which are exclusive to one another.  Those options are provided in section 39.521(3)(b), Florida Statutes (2018), which states, in pertinent part:

4

If there is a parent with whom the child was not residing at the time the events or conditions arose that brought the child within the jurisdiction of the court who desires to assume custody of the child, the court shall place the child with that parent upon completion of a home study, unless the court finds that such placement would endanger the safety, well-being, or physical, mental, or emotional health of the child. . . . *If the court places the child with such parent, <u>it may do **either**</u> <u>of the following</u>*:

1. Order that the parent assume sole custodial responsibilities for the child. The court may also provide for reasonable visitation by the noncustodial parent. The court may then terminate its jurisdiction over the child.

2. Order that the parent assume custody subject to the jurisdiction of the circuit court hearing dependency matters. The court may order that reunification services be provided to the parent from whom the child has been removed, that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court jurisdiction, or that services be provided to both parents, in which case the court shall determine at every review hearing which parent, if either, shall have custody of the child. The standard for changing custody of the child from one parent to another or to a relative or another adult approved by the court shall be the best interest of the child.

§ 39.521(3)(b), Fla. Stat. (2018) (emphasis added).

Here, the circuit court erred because it proceeded under *both* subsections (3)(b)1. and (3)(b)2. by placing the child with the father and terminating jurisdiction, *and* requiring the mother to complete a case plan. According to the statute, the circuit court was required to proceed under *either* subsection (3)(b)1. *or* subsection (3)(b)2.

We recognize that section 39.521(3)(b)'s use of the phrase "may do either," taken by itself, may be interpreted to mean "may do either *but not both*" or "may do either *or both*."

However, we conclude that 39.521(3)(b)'s use of the phrase "may do either," when taken in context of the two options which follow, logically can be interpreted only as "may do either *but not both*." That is because

5

the two options, on their face, are exclusive to one another. *See Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992) ("It is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole.") (emphasis in original).

Under the first option, the non-offending parent assumes sole custodial responsibilities for the child, the noncustodial parent may be given visitation, neither parent receives services, and the circuit court may terminate its jurisdiction over the child.

Under the second option, the non-offending parent assumes custody subject to the circuit court's continuing jurisdiction, during which the circuit court may order that services be provided to either parent or both, with the circuit court later determining which parent shall have custody of the child.

Our conclusion that section 39.521(3)(b)'s use of the phrase "may do either" logically can be interpreted only as "may do either but not both" is consistent with the Fifth District's conclusion on this issue. In *K.E. v. Department of Children and Families*, 958 So. 2d 968 (Fla. 5th DCA 2007), our sister court summarized section 39.521(3)(b) as follows:

> [O]nce the trial court decides to place the dependent child with a non-offending parent, *it may do one of two things*: it may order the non-offending parent to assume sole custodial responsibility and terminate its jurisdiction over the child, *or* the court may place the child with the non-offending parent, provide services to one or both parents, and retain jurisdiction to determine the better placement for the child as the dependency progresses.

*Id.* at 971 (emphasis added).

Our conclusion that 39.521(3)(b)'s use of the phrase "may do either" logically can be interpreted only as "may do either *but not both*," also is consistent with common sense. By terminating jurisdiction while ordering the mother to complete a case plan, the court lacked any mechanism to oversee the mother's completion of the case plan. The circuit court initially appeared to understand the lack of logic to such an outcome, commenting "there really is no bite" if the circuit court were to terminate jurisdiction while ordering the mother to complete a case plan.

It appears the Department's response to the circuit court's question on this issue led the circuit court astray, by convincing the circuit court that

the mother's attempt to complete the case plan without court supervision would aid the mother in regaining custody at a later date. While ordering the mother to complete a case plan without court supervision may have been intended to aid the mother, such an order nevertheless lacked statutory authority once the court placed the child with the father and terminated jurisdiction.

In the answer brief, the Department, perhaps sensing the possibility of error, nevertheless argues that any error was harmless because "[the circuit court's] approval of the maintain and strengthen case plan only benefitted the Mother. Also, because the [circuit] court terminated supervision and jurisdiction, the Mother is not legally obligated to comply with the services and tasks provided for her in the approved maintain and strengthen case plan if she does not wish to do so." (internal citations omitted).

We conclude the error was not harmless. After the circuit court placed the child with the father and terminated jurisdiction, the circuit court plainly lacked the statutory authority to order the mother to complete a case plan. The case plan order also may have been confusing to the mother, because the order was premised on the unsubstantiated suggestion that completing the case plan, without the circuit court's supervision, would assist the mother to obtain a future modification from a different court. *Cf. A.L. v. Dep't of Children & Families*, 53 So. 3d 324, 328 (Fla. 5th DCA 2010) ("[T]he possibility of a future modification is not an excuse for utilizing confusing goals and procedures and failing to allow a parent a reasonable opportunity to complete a case plan.").

2. ***After the Circuit Court Removed the Child from the Mother, the Circuit Court Lacked Statutory Authority to Require the Mother to Complete a "Maintain and Strengthen" Case Plan***

If the circuit court had correctly followed its initial instinct to keep jurisdiction in order to require the mother to complete a case plan, then the court nevertheless lacked the statutory authority to require the mother to complete a "maintain and strengthen" case plan after having removed the child from the mother and placing the child with the father.

Section 39.621(2), Florida Statutes (2018), authorizes a "maintain and strengthen" case plan in only three circumstances:

(a) *If a child has not been removed from a parent*, even if adjudication of dependency is withheld, the court may leave

7

the child in the current placement with maintaining and strengthening the placement as a permanency option.

(b) *If a child has been removed from a parent and is placed with the parent from whom the child was not removed,* the court may leave the child in the placement with the parent from whom the child was not removed *with maintaining and strengthening the placement as a permanency option.*

(c) *If a child has been removed from a parent and is subsequently reunified with that parent,* the court may leave the child with that parent with maintaining and strengthening the placement as a permanency option.

§ 39.621(2), Fla. Stat. (2018) (emphasis added).

Here, subsection (2)(a) does not apply because the child had been removed from the mother. Subsection (2)(c) does not apply because the child has not been reunified with the mother.

That leaves subsection (2)(b). Subsection (2)(b)'s first clause initially appears tempting as a means to order a "maintain and strengthen" case plan for the mother, as subsection (2)(b) may be applied "[i]f a child has been removed from a parent and is placed with the parent from whom the child was not removed," which occurred here.

However, subsection (2)(b)'s second clause does not provide the means to order a "maintain and strengthen" case plan for the mother. The second clause provides that "the court may leave the child in the placement with the parent from whom the child was not removed *with maintaining and strengthening the placement as a permanency option.*" Applied here, subsection (2)(b)'s second clause authorizes a "maintain and strengthen" case plan for *the father,* because the child has been placed *with the father, not with the mother.*

Thus, if the circuit court's intent was to require the mother to complete a case plan after having placed the child with the father, the court lacked statutory authority to order a "maintain and strengthen" case plan for the mother. Rather, a case plan in the form which the court ordered – requiring the mother to complete parenting classes, maintain safe and stable housing, complete domestic violence therapy and education, complete a mental health evaluation and any recommended treatment, and visit her case manager at least once per week – may have been better couched as a "reunification" case plan.

## *Conclusion*

Based on the foregoing, we reverse the circuit court's "Order of Adjudication, Disposition, Acceptance of Case Plan, and Termination of Supervision and Jurisdiction." On remand, if the circuit court maintains its decision to have the child placed with the father and terminate jurisdiction, then the circuit court shall not order the mother to complete a case plan. However, if the circuit court's intent is to require the mother to complete a case plan, then the circuit court must maintain jurisdiction and oversee a case plan permitted under Chapter 39. In reaching our decision, we take no position on which action the circuit court should pursue.

*Reversed and remanded.*

TAYLOR and KUNTZ, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**