854 So.2d 819 (2003)
DEPARTMENT OF CHILDREN AND FAMILIES, Appellant,
v.
T.L., a Minor Child, Appellee.
No. 4D03-1624.
District Court of Appeal of Florida, Fourth District.
September 17, 2003.
*820 Charles J. Crist, Jr., Attorney General, Tallahassee, and Lori R. Shapiro, Assistant Attorney General, Fort Lauderdale, for appellant.
Felicia Shaman of the Law Office of Felicia Shaman, P.A., Fort Lauderdale, for appellee.
STEVENSON, J.
This dependency case concerns whether the trial court erred in placing the minor child, T.L., in the home of a relative without the completion of a home study. This court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(4). Because the governing statutes and case law required that a home study be completed prior to the trial court placing T.L. with her maternal aunt, we reverse.
T.L. was removed from the custody of her father, G.L., based on allegations that the father physically abused the child by hitting her with a belt, resulting in bruises. The father consented to the petition for dependency and the child was adjudicated dependent. A disposition order was entered, placing the child in the temporary custody of her twenty-year-old sister.
After finding that the original risk had been remedied, the court ordered that the child be returned to her father. The child subsequently ran away after spending just three weeks with the father. This prompted the child's attorney ad litem to file an emergency motion for change of placement, seeking to place T.L. with her maternal aunt, T.B.[1]
At the March 3, 2003 hearing, the DCF worker testified that the father had substantially complied with the case plan tasks, that the risks to the child had been remedied, and that placement with the father was recommended. The therapist, however, indicated that while the father was "very willing," the child had "shutdown."
At the hearing, the court expressed concerns about the child being returned to the father because she might run away again. The father stated that he had done everything under the case plan, and that the child had missed the majority of the school year and had been associating with a boy who had been arrested. The father believed that T.L. did not want to return home because she did not want to abide by his curfew and house rules. The trial court responded:
You're not seeing the practical side. That's my concern. My concern is she's going toyou're going to have your rules and whatever and she's going to run. At the present, here's one problem we've got is she thinks that she can go to her aunt and obviously she thinks she can play you. Now, you don't strike me as someone that would be easily played.
. . . .
[S]he's going to run. She comes back to your house she's going to run, isn't she?
. . . .
If I can at least keep her off the street and in school for a little while, that's a great thing. And I've got more faith in the aunt I guess than you do.
*821 Ultimately, the court placed the child with the aunt over the father's and DCF's objection. DCF specifically objected to the child being placed with the aunt before the background check and home study had been completed.
Section 39.522, Florida Statutes (2002), governs "postdisposition change of custody" and provides in part:
The court may change the temporary legal custody or the conditions of protective supervision at a postdisposition hearing, without the necessity of another adjudicatory hearing.
(1) A child who has been placed in the child's own home under the protective supervision of an authorized agent of the department ... may be brought before the court by the department or by any other interested person, upon the filing of a petition alleging a need for a change in the conditions of protective supervision or the placement.... The standard for changing custody of the child shall be the best interest of the child. If the child is not placed in foster care, then the new placement for the child must meet the home study criteria and court approval pursuant to this chapter. (emphasis added).
Section 39.521(2)(r) provides the home study criteria required by the chapter:
(r) If the child has been removed from the home and will be remaining with a relative or other adult approved by the court, a home study report concerning the proposed placement shall be included in the predisposition report. Prior to recommending to the court any out-of-home placement for a child other than placement in a licensed shelter or foster home, the department shall conduct a study of the home of the proposed legal custodians, which must include, at a minimum: [factors provided]
. . . .
The department shall not place the child or continue the placement of the child in a home under shelter or postdisposition placement if the results of the home study are unfavorable, unless the court finds that this placement is in the child's best interest.
Despite the trial court's good intentions in this case, the statutory scheme clearly requires that a home study be completed before a child is ordered to any out-of-home placement, other than a licensed shelter or foster home. See § 39.522; Dep't of Children & Families v. R.G., 821 So.2d 477 (Fla. 4th DCA 2002)(finding that trial court erred in changing legal and physical custody of the child without a home study).
Based on the following language in section 39.521(2)(r), T.L. argues that the trial court has discretion to place the child in a home, prior to having a home study report, if the trial court finds that the placement is in the child's best interest:
The department shall not place the child or continue the placement of the child in a home under shelter or postdisposition placement if the results of the home study are unfavorable, unless the court finds that this placement is in the child's best interest. (emphasis added).
As DCF correctly points out, however, this language gives the trial court discretion to make a placement in spite of a negative home study. The statute does not give the trial court the authority to place the child in a home without conducting any home study at all. Indeed, in virtually all instances, a home study would be necessary to enable the trial judge to make a well-informed best interest determination under section 39.521(2)(r). For example, despite a prospective placement being a caring relative with a nice home *822 and good job, a convicted child molester may also reside in the same household; certainly that information would be unearthed in a thorough home study.
Accordingly, we reverse the temporary placement order and remand for further proceedings consistent with this decision.
POLEN and SHAHOOD, JJ., concur.
NOTES
[1] T.L. stayed with T.B. for a time after she ran away from home.