STEVENSON, J.
In this dependency case, the Mother appeals the trial court’s “Order Relinquishing Jurisdiction of this Court as to the Child.” We vacate the order and remand for further proceedings.
The Child was sheltered following a domestic violence incident between the Mother and her boyfriend. At the time, the Mother had custody of the Child pursuant *306 to an order issued in a Domestic Relations case between the Mother and the Father.
The Father, who resides in Texas, appeared at the shelter hearing and requested that the Child be placed with him. The presiding judge issued the Shelter Order placing the Child with the Father. The Mother, the Department of Children and Families, and the Guardian Ad Litem all consented to the placement even though the Father planned to take the Child to Texas.
The parties appeared before a different judge three weeks later for the Arraignment on the Department’s Petition for Dependency. When counsel for the Mother learned that the Department had not performed an ICPC home study on the Father’s Texas residence, she státed “the law requires an ICPC home study be done before a child can be pláced in another state.”[1] The judge asked how long ICPC compliance would take and whether the Child could stay with the Father during that time. The attorneys for the GAL and thé Department informed the judge that compliance with the ICPC would take months and that there was no way the Child could stay with the Father while the ICPC study was being completed.[2]
These. attorneys, neither of whom had attended the shelter hearing, convinced the judge that the Child had “already been placed” with the Father by virtue of the Shelter Order. Since the Department had not performed an ICPC study before the placement, the attorneys argued that the only way the placement could be maintained was for the court to relinquish its jurisdiction over the Child. As authority for this procedural maneuver, the attorneys cited an ICPC Regulation.
When the court places the child with a parent from whom the child was not removed, and the court has no evidence that the parent: is unfit, does not seek any evidence from the receiving state that the parent is either fit or unfit, and the court relinquishes jurisdiction over the child immediately upon placement with the parent, the receiving state shall have no' responsibility for supervision or monitoring for the court having made the placement.
AAICPC Regulation No. 2(3)(a). Over the Mother’s objections, the trial court agreed to relinquish jurisdiction pursuant to the Regulation, finding that the Shelter Order placed the Child with her Father, the parent from whom she was not removed.
The trial court’s first error was its finding that the Child was permanently placed with the Father by virtue of the Shelter Order. The Shelter Order did not alter the Father’s status as the noncustodial parent under the prior Domestic Relations order. By definition, shelter custody is temporary, “pending court disposition before' or after adjudication.” § 39.01(70), Fla. Stat. (2015). In this pre-dispositional posture, the Child’s living status was one of placement.
*307 In such circumstances,-the parent’s situation is not custody or possession as a matter of parental right, but rather it is the same as the position of .a foster parent. In both instances they are caregivers only because of the authority conferred to them by the state acting through the court.
H.P. v. Dep’t of Children & Families, 838 So.2d 583, 586 (Fla. 5th DCA 2003) (quoting The Interstate Compact on the Placement of Children: A Manual and Instructional Guide for Juvenile and Family Court Judges, 34 (2001)). While the parties at the Shelter Hearing did not oppose the temporary placement of the Child with the Father, it was not anyone’s intent that the Shelter Order abrogate the order issued in the Domestic Relations case which awarded custody to the Mother. To the extent the trial court converted the Father’s shelter custody into permanent custody without an evidentiary hearing and without compliance with-Chapter 39, we hold the trial court erred.
The trial court’s second error was the presumption that the ICPC could be avoided altogether if, after transferring custody to thq out-of-state parent, the court simply relinquished its jurisdiction over the Child. Circumventing the ICPC in this manner is not in the best interests of this state’s dependent children.
Once a court has legal custody of a child, it would be negligent to relinquish that child to an out-of-state parent without some indication that the parent is able to care for the child appropriately. The ICPC provides an effective mechanism for gleaning that evidence and for maintaining a watchful eye , over the placement. , i
Dep’t of Children & Families v. Benway, 745 So.2d 437, 439 (Fla. 5th DCA 1999).
The Department was required to comply with the ICPC in this case because the Father was a noncustodial parent under a prior court order. While the AAICPC may have promulgated a Regulation which allows a state to skirt the. ICPC requirements in some circumstances, the cited Regulation has not been adopted into law by the State of Florida, Controlling Florida precedent simply, does not allow a child to be placed with a noncustodial parent in another state without compliance with the ICPC. E.g., C.K. v. Dep’t of Children & Families, 949 So.2d 336, 337-38 (Fla. 4th DCA 2007) (holding that even though the father was non-offending, “the ICPC applies here because the court is transferring custody of the child to an out-of-state noncustodial parent”).
Finally, we find that the trial court erred in relinquishing jurisdiction over the Child in the middle of this dependency case after removing her from the Mother who had custody under a prior court order. See M.A.C. v. Fla. Dep’t of Children & Families, 73 So.3d 327 (Fla. 1st DCA 2011). The dependency statutes provide for an arraignment followed by an adjudication followed by disposition hearings. §§ 39.501-521, Fla. Stat. (2015). These statutes ensure due process for parents and include numerous safeguards to protect dependent children. When the trial court relinquished jurisdiction, it effectively awarded permanent custody to the Father without an evidentiary hearing and without adhering to any óf the procedural safeguards found in Chapter 39. This act not only deprived the Mother of due process, it could have placed the Child in an unsafe home with no Departmental oversight. See H.P., 838 So.2d at 585.
Accordingly, the trial court’s Order Relinquishing Jurisdiction is vacated. This opinion does not compel the removal of the Child from her Father’s residence in Texas. Rather, the trial court must hold a hearing on remand to ensure -the Child is *308 in a safe placement. In re J.D., 35 So.3d 145 (Fla. 2d DCA 2010). If the trial court finds it is in the Child’s best interest to be placed with the Father pending disposition, the Department must comply with the ICPC. In that case, the trial court must determine if it is in the Child’s best interest to remain with the Father pending the Department’s compliance with the ICPC. Dep’t of Children & Families v. T.T., 42 So.3d 962, 964 (Fla. 5th DCA 2010).

Vacated and remanded.

GERBER and LEVINE, JJ., concur.

. The Interstate Compact on the Placement of Children ("ICPC”), codified at Florida Statutes sections 409.401-.409 (2015), is an agreement between signatory states to facilitate interstate placement of dependent and adoptive children. See generally Dep’t of Children & Families v. Fellows, 895 So.2d 1181, 1184 (Fla. 5th DCA 2005).

. The attorneys were incorrect in their argument that the Child could not stay with the Father during the ICPC process. “Even if an out-of-state placement does not strictly comply with the ICPC, a court may allow the child to remain in the out-of-state placement during the ICPC process if it is iri the child's best interest.” R.F. v. Dep’t of Children & Families, 50 So.3d 1243, 1244 (Fla. 4th DCA 2011).