IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,
DEPARTMENT OF CHILDREN
AND FAMILIES,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Appellant,

CASE NO. 1D16-5873

v.

M.A., Father of M.R.A. and C.A.,
minor children,

Appellee.

_____/

Opinion filed April 10, 2017.

An appeal from the Circuit Court for Dixie County.
Jennifer J. Ellison, Judge.

Ward L. Metzger, Appellate Counsel, Department of Children and Families, Jacksonville, for Appellant.

Heidi P. Kemph, Alachua, for Appellee.

BILBREY, J.

The Florida Department of Children and Families appeals the circuit court's second amended order dismissing dependency proceedings. The Department claims error based on the lack of compliance with the Interstate Compact on the

Placement of Children (ICPC) as required by section 409.401, Florida Statutes, and the lack of a home study of the father's residence in Indiana. See §§ 39.521(3)(b), 39.522(1), Fla. Stat. (2016). We agree with the Department, and hold that however well intentioned, the circuit court committed error in dismissing the dependency proceedings and thereby making a de facto placement with the out-of-state father. The order dismissing the dependency proceeding is reversed and this matter remanded for further proceedings.

Upon the Department's dependency shelter petition, the circuit court entered its shelter order for four children on August 11, 2015. See § 39.401, Fla. Stat.; Fla. R. Juv. P. 8.655. The proceedings were based on an incident of domestic violence in the home where the children lived with their mother and the father of the youngest child. The children were placed with their maternal grandmother, under the protective custody of the Department. M.A., the father of two of the children, was incarcerated in North Carolina at the time, had not lived with the children recently, and was not involved in the incident resulting in the shelter of the children. Although M.A.'s location was referenced in the pleadings and order, he was not served and the Department represented that he was not noticed of the proceedings due to his incarceration.

The Department filed a petition for dependency proceedings for all four children on August 20, 2015. M.A. was released by the State of North Carolina on

September 12, 2015, and was unaware of the status of his children at that point. The court adjudicated the children dependent, by order entered October 8, 2015, and on October 16, 2015, a case plan was filed by the Department, establishing tasks for the mother and the father of the youngest child. M.A. was not a party to the case plan, not assigned any tasks, and not served or copied with the Plan.

M.A. sought information from the clerk of courts and contacted or was contacted by a representative of the community based care provider, and thus became aware of the dependency proceedings involving his two children. The court appointed counsel for M.A. on November 20, 2015, and counsel requested and obtained discovery of the case file. Through counsel, M.A. filed a motion to modify visitation on December 11, 2015, and requested an order directing the Department to seek a home study of his residence pursuant to section 409.401, Florida Statutes, the ICPC.

The court heard M.A.'s motion on December 18, 2015. Counsel for M.A. was present and M.A. appeared by telephone. The court found that M.A. acknowledged paternity of M.R.A. and C.A., and that the mother had previously testified that M.A. was the father of these children. Accordingly, the court held that M.A. was established as the father of M.R.A and C.A. In addition, the court found that upon discovering the dependency action, M.A. denied the allegations in the Department's petition and requested an adjudicatory hearing. Finally, the court

3

ordered the Department to seek an ICPC home study on M.A.'s home, as M.A. had requested. See § 409.401, Fla. Stat.

The children remained in their placement with their maternal grandmother in Florida while the Department pursued an ICPC home study for M.A.'s home in Indiana. The Department amended its petition for dependency to remove the allegations against M.A.[1] but did not amend the case plan to impose any tasks for M.A. The Department consistently alleged in the subsequent filings that it recommended placement of M.A.'s children in Indiana and the court consistently ordered that the Department was authorized to place M.R.A. and C.A. with their father "upon an approved ICPC home study."

Upon M.A.'s motion, the court allowed M.R.A. and C.A. to spend the summer of 2016 with M.A. in Indiana, and by all accounts the extended visit went well. Over the summer, the Indiana Department of Child Services denied the ICPC approval because M.A. failed to return the required paperwork to the correct office.

---

[1] The original dependency petition alleged that M.A. was a registered sex-offender, had battered the mother, and had been imprisoned for a sex crime against a minor. These allegations were based on statements of the mother but were supported in the record only by the Department's filing of an Information filed in Indiana in 1998, when M.A. was 19 years old. M.A. was charged with "sexual misconduct with a minor" due to an alleged sexual relationship with a 14-year-old girl. The Department did not file a judgment, sentence, or any other document showing the disposition of this Indiana charge. There was no evidence presented to indicate that Appellant's recent incarceration in North Carolina was for any sexual or violent offense. Counsel for M.A. represented to the court that Appellant was incarcerated "for embezzlement" and the Department did not dispute this representation.

M.A.'s children returned to their grandmother's home after the summer visit and started the school year in Florida.

After finding that the mother failed to make any progress with her case plan within the one-year time frame for permanency, the circuit court directed the Department to file a petition to terminate the mother's parental rights. In September 2016, rather than going forward with the termination of parental rights, the court entered its order placing the two children not fathered by M.A. into permanent guardianship with the maternal grandmother. See § 39.6221, Fla. Stat. M.A.'s children remained under the protective supervision of the Department, in a temporary placement with their grandmother.

The Department initiated a second attempt to obtain the ICPC home study and approval from Indiana officials, to no avail. By letter dated October 24, 2016, the Indiana Department of Child Services informed M.A. that the case worker had observed his home "and noted that there were six beds in the home, smoke detectors, fire extinguisher in the kitchen and the home had working utilities and was appropriately clean." However, the lack of paperwork and M.A.'s cancellation of the home visit scheduled for October, caused the case worker to deny M.A.'s ICPC for a second time.

At a hearing held November 18, 2016, M.A.'s counsel described M.A.'s efforts to communicate and cooperate with the Indiana child services personnel and

his difficulty in reading the required paperwork. Counsel for M.A. assured the court that there were "no issues with the house," but problems only with coordination and communication. The parties and the court acknowledged that the children could not be sent out of state without the ICPC approval, but counsel for M.A. argued that because he was the father, not involved in the situation which prompted the dependency action, and not subject to any case plan tasks, the case should be dismissed and M.A. be allowed to take his children home with him to Indiana. In its second amended order, entered January 17, 2017, the circuit court dismissed the dependency action as to M.R.A. and C.A., "without jurisdiction being retained." It was clear at the time of dismissal that the circuit court had intended, and the grandmother had agreed, that M.R.A. and C.A. would live with their father in Indiana.

Although M.A. was not initially served with the dependency action, was not living with the children or involved in the incident which prompted the dependency action, not made a party to the case plan, and his parental rights have not been directly judicially altered, under our governing precedent, M.A. is not automatically entitled to assume custody of his children and relocate them to his home in another state by virtue of his parental rights.[2] Under current law, the

---

[2] It should be noted that no constitutional challenge to the application of the ICPC to a non-offending, noncustodial parent was raised before the trial court or is raised here. See Vivek Sankara, Out of State and Out of Luck: The Treatment of Non-

6

circuit court's assumption of jurisdiction over M.A.'s children in the dependency action necessitates an "interstate placement" subject to the ICPC in order for M.A. to remove his children from their placement with their grandmother and return with them to his home in Indiana. Dep't of Children & Families v. C.T., 144 So. 3d 684, 686 (Fla. 1st DCA 2014). His status prior to the circuit court's order on appeal was "the same as the position of a foster parent" and the court was not authorized to relinquish its jurisdiction over these children without complying with the ICPC study and positive report from Indiana officials. Id.[3] See also D.R. v. J.R., 203 So. 3d 952 (Fla. 5th DCA 2016) (reversing order placing children with father in Massachusetts and relinquishing jurisdiction in dependency action; ICPC cannot be avoided by transferring custody to out-of-state parent and relinquishing jurisdiction); B.G. v. Dep't of Children & Families, 189 So. 3d 305 (Fla. 4th DCA 2016) (vacating order placing child out-of-state in custody of previously non-custodial parent and subsequent relinquishment of jurisdiction to circumvent ICPC requirements).

While the frustration of the parties and the circuit court with the repeated failures, despite the parties' apparent good-faith efforts, to obtain a favorable ICPC report from Indiana officials, is certainly understandable, the order dismissing the

_____

Custodial Parents Under the Interstate Compact on the Placement of Children, 25 Yale L. & Pol'y Rev. 1, 63-94 (2006).

[3] This holding will change if the Interstate Compact **for** the Placement of Children becomes effective in Florida. See § 409.408, Fla. Stat., Art. III.B.5.

7

dependency action and relinquishment of the court's jurisdiction cannot be affirmed. Additionally, even without the ICPC requirement, section 39.522(1), requires compliance with "the home study criteria," and that requirement has not been met.

Accordingly, the circuit court's order dismissing the dependency action and relinquishing jurisdiction over these children is reversed. The case is remanded for further proceedings. If M.R.A. and C.A. are currently with M.A. out of state, this opinion does not compel their removal and return to Florida. See B.G., 189 So. 3d at 307; D.R., 203 So. 3d at 956. "Rather, the trial court must hold a hearing on remand to ensure the [children are] in a safe placement." B.G., 189 So. 3d at 307-08. "If the trial court finds it is in the [children's] best interest to be placed with the Father pending disposition, the Department must comply with the ICPC." Id. at 308; see also D.R., 203 So. 3d at 956. "In that case, the trial court must determine if it is in the [children's] best interest to remain with the Father pending the Department's compliance with the ICPC." B.G. (citing Dep't of Children & Families v. T.T., 42 So. 3d 962, 964 (Fla. 5th DCA 2010)).

REVERSED AND REMANDED.

RAY, J., CONCURS, WOLF, J., DISSENTS WITHOUT OPINION.