DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DEPARTMENT OF CHILDREN & FAMILIES,**
Appellant,

v.

**J.J.**, a child, and the **STATEWIDE GUARDIAN AD LITEM OFFICE,**
Appellees.

No. 4D2024-1266

[November 27, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Yael Gamm, Judge; L.T. Case No. 19-000313-DP.

Carolyn A. Schwarz, Children's Legal Services, Fort Lauderdale, for appellant.

Sara E. Goldfarb, Statewide Director of Appeals, and Sarah Todd Weitz, Senior Attorney, Appellate Division, Statewide Guardian Ad Litem Office, Tallahassee, for appellee Guardian ad Litem o/b/o J.J.

GERBER, J.

In this child dependency proceeding, the department appeals from four circuit court orders: (1) modifying the child's placement; (2) placing the child in a permanent guardianship while terminating the department's protective supervision and the circuit court's jurisdiction; (3) establishing the permanent guardian's authority; and (4) denying the department's motion for rehearing. We are compelled to reverse all four orders and remand for further proceedings consistent with this opinion.

### *Procedural History*

This dependency proceeding involves a child who, since December 2021, had been a runaway from the department's Florida supervision, with brief periods of intermittent contact with the department. Fortunately, in April 2024, the child turned up safe in Ohio upon visiting his paternal uncle, who reported the child's location to the department. The uncle expressed a willingness to care for the child until the child turns eighteen in December 2024.

Upon the child being located, the child's attorney ad litem immediately filed a motion for order of compliance with the Interstate Compact for Placement of Children ("ICPC"), section 409.401, Florida Statutes (2023), and for modification of placement. The motion requested an ICPC home study for the uncle's home in Ohio, and to modify the child's placement to the uncle in Ohio.

After a non-evidentiary hearing, the circuit court entered the first three orders on appeal which, collectively and effectively: (1) modified the child's placement to a permanent guardianship with the uncle; (2) terminated the department's supervision and the circuit court's jurisdiction; and (3) dismissed as moot the attorney ad litem's ICPC request. The circuit court later entered a fourth order denying the department's motion for rehearing.

On appeal, the department argues the circuit court erred in three respects, by: (1) placing the child with a relative without a home study and/or compliance with the ICPC; (2) placing the child in a permanent guardianship; and (3) terminating the department's supervision and the circuit court's jurisdiction—all without adequate prior notice and without first holding an evidentiary hearing on the placement and permanency issues. The department adds that, although the child will turn eighteen in December 2024, our review is warranted because "the[se] issue[s] [are] important and capable of repetition yet evading review." *Dep't of Child. & Fams. v. T.S.*, 154 So. 3d 1223, 1224 n.1 (Fla. 4th DCA 2015).

The child's guardian ad litem concedes the circuit court erred as the department has argued, and that reversal is required for the circuit court to provide proper notice, conduct an evidentiary hearing, and make the findings required under section 39.6221, Florida Statutes (2023), which governs a dependent child's permanent guardianship. However, the guardian ad litem argues the child should be permitted to remain with his uncle in Ohio while the circuit court, on remand, makes its determinations, and while the ICPC process is pending.

### *Our Review*

We agree with the department's request for review. *See T.S.*, 154 So. 3d at 1224 n.1; *Henry & Rilla White Found., Inc. v. Migdal*, 720 So. 2d 568, 574 n. 4 (Fla. 4th DCA 1998) ("Although we were advised … that the case may now be moot, we have issued this opinion because of its effect upon the administration of the juvenile justice system and on similar cases.").

2

Our standard of review is de novo. *See N.A. v. Dep't of Child. & Fams.*, 267 So. 3d 430, 433-34 (Fla. 4th DCA 2019) ("[B]ecause it appears the circuit court's order, and the mother's arguments on appeal, both rest upon the interpretation of Chapter 39's requirements, our review is de novo."); *Ackerman v. HMC Assets, LLC*, 338 So. 3d 295, 296 (Fla. 4th DCA 2022) ("Whether a trial court has complied with the guarantees of due process is reviewed de novo.").

Applying de novo review, we agree with the guardian ad litem's concession of error. We further conclude the circuit court, on remand, may consider the guardian ad litem's request for the child to remain with his uncle in Ohio while the circuit court makes its determinations, and while the ICPC process is pending.

Our decision to reverse the circuit court's order is based on four grounds.

First, as the department argues and the guardian ad litem concedes, the circuit court erred in entering the permanent guardianship orders without sufficient notice and without conducting an evidentiary hearing to make the findings required under section 39.6221. As the department's initial brief explains:

> [T]he [subject] hearing was only noticed for the Attorney ad Litem's motion for modification of placement and ICPC [compliance]. Since [the case] was not scheduled for a permanency review and there was no motion for change of case plan goal, there was no notice that the goal was going to be changed to [p]ermanent [g]uardianship. All procedures in a dependency case must comport with due process principles, including proper notice [and an opportunity to be heard]. Otherwise, fundamental error occurs. *Dep't of Child[.] & Fam[s.] v. T.S.*, 154 So. 3d 1223[, 1226] (Fla. 4th DCA 2015).

Second, the circuit court lacked statutory authority to place the child in a permanent guardianship. Section 39.6221 authorizes the circuit court to place a dependent child in permanent guardianship under specific conditions:

> (1)  If a court determines that reunification or adoption is not in the best interest of the child, the court may place the child in a permanent guardianship with a relative or other adult approved by the court if ***all*** of the following conditions are met:

(a)   The child has been in the placement for not less than the preceding 6 months.

(b)   The permanent guardian is suitable and able to provide a safe and permanent home for the child.

(c)   The court determines that the child and the relative or other adult are not likely to need supervision or services of the department to ensure the stability of the permanent guardianship.

(d)   The permanent guardian has made a commitment to provide for the child until the child reaches the age of majority and to prepare the child for adulthood and independence.

(e)   The permanent guardian agrees to give notice of any change in his or her residential address or the residence of the child by filing a written document in the dependency file of the child with the clerk of the court.

(f)   The child demonstrates a strong attachment to the prospective permanent guardian, and such guardian has a strong commitment to permanently caring for the child.

§ 39.6221(1), Fla. Stat. (2023) (emphases added).

Here, as the department's initial brief submits:

The [circuit] court placed the [c]hild in a [p]ermanent [g]uardianship at the same time it placed the [c]hild with the uncle.  The [c]hild had not been in this placement for the preceding six (6) months[, as section 39.6221(1)(a) requires]. As of the … hearing [date], the [c]hild had only been with the uncle at most for about two weeks.  [Furthermore, neither] [t]he uncle [nor the child] testif[ied] at the hearing and there was scant testimony regarding the placement based [on] what was conveyed by the uncle and child to the [missing persons specialist].

Thus, neither the department nor the circuit court was able to determine or affirm that subsections (1)(b)-(f) were met.

4

Third, even if the circuit court properly had placed the child in a permanent guardianship, the court was not authorized to terminate its jurisdiction over the child. *See* § 39.6221(5), Fla. Stat. (2023) ("The court shall retain jurisdiction over the case and the child shall remain in the custody of the permanent guardian unless the order creating the permanent guardianship is modified by the court. The court shall discontinue regular review hearings and relieve the department of the responsibility for supervising the placement of the child.").

Fourth, the circuit court reversibly erred by placing the child with a relative without a home study and compliance with the ICPC. As we have stated:

> Despite the trial court's good intentions …, the statutory scheme clearly requires that a home study be completed before a child is ordered to any out-of-home placement, other than a licensed shelter or foster home. *See* § 39.522; *Dep't of Children & Families v. R.G.*, 821 So. 2d 477 (Fla. 4th DCA 2002) (finding that trial court erred in changing legal and physical custody of the child without a home study).

*Dep't of Child. & Fams. v. T.L.*, 854 So. 2d 819, 821 (Fla. 4th DCA 2003); § 39.522(2)(c), Fla. Stat. (2023).

Further, as the department's initial brief submits:

> Florida [a]ppellate [c]ourts are uniform in holding that before a child is sent to a receiving state, there must be compliance with the ICPC, there must be a home study, the receiving state must concur with the placement, and the placement must not be contrary to the interests of the child. *See, e.g.,* … *Dep't of Child[.] & Fam[s.] v. T.T.*, 42 So. 3d 962[, 963-64] (Fla. 5th DCA 2010) [("[A] trial court cannot send children to a receiving state unless it has complied with each and every requirement set forth in Article III of the ICPC. The ICPC requires that the receiving state evaluate the placement before the child is placed and then monitor the placement to protect the child.") (internal citations and quotation marks omitted); *M.A.C. v. Fla. Dep't of Child. & Fams.*, 73 So. 3d 327[, 328] (Fla. 1st DCA 2011) [("[T]he [circuit] court erred by terminating supervision and permanently placing K.P. with her father before the ICPC requirements were satisfied.")] …

It is clear from the statutory language that the purpose of the ICPC is to ensure the safety of a child by having the receiving state agency involved with the ability to observe the child's surroundings and assess the child's needs. The Fifth District recognized [that, despite a] trial court's "well-intentioned motives[,]" ... ***"a trial court is not free to disregard the ICPC, even if the court believes the statute handcuffs it in determining a child's best interest under the unique circumstances of the case."*** *Dep't of Child[.] & Fam[s.] v. S.B.*, 274 So. 3d 1170, 1172 (Fla. 5th DCA 2019) ... (emphasis added). ...

Florida [appellate] [c]ourts have even upheld ICPC requirements for placement with *parents* who reside out of state. [*See, e.g.*,] *B.G. v. Dep't of Child[.] & Fam[s.]*, 189 So. 3d 305[, 307) (Fla. 4th DCA 2016) [("Once a court has legal custody of a child, it would be negligent to relinquish that child to an out-of-state parent without some indication that the parent is able to care for the child appropriately.") (quoting *Dep't of Child[.] & Fam[s.] v. Benway*, 745 So. 2d 437, 439 (Fla. 5th DCA 1999)).]

Based on the foregoing, we reverse the four orders on appeal, and remand for reinstatement of protective supervision and consideration of the child's placement and permanency following proper notice, an evidentiary hearing, and proper findings required under section 39.6221.

We also conclude the circuit court may consider whether to permit the child to remain with his uncle in Ohio while the court resolves these issues and pending the ICPC process's completion. As our sister court has stated:

While we do not typically reward the failure to follow the law, neither do we wish to cause harm to [the] [c]hild, who is caught in the middle of this dispute. This Court[, as well as the Fourth District,] ha[ve] permitted children to remain where their best interests lie pending the completion of the ICPC process. *See D.R. v. J.R.*, 203 So. 3d 952, 956 (Fla. 5th DCA 2016) ("[N]otwithstanding the trial court's error, the children are not required to be immediately returned to Florida." (citations omitted)); ... *B.G. v. Dep't of Child. & Fams.*, 189 So. 3d 305, 306 n.2 (Fla. 4th DCA 2016) ("Even if an out-of-state placement does not strictly comply with the ICPC, a court may allow the child to remain in the out-of-state placement during the ICPC process if it is in the child's best

6

interest." (quoting *R.F. v. Dep't of Child. & Fams.*, 50 So. 3d 1243, 1244 (Fla. 4th DCA 2011))).

*Dep't of Child. & Fams. v. S.B.*, 274 So. 3d 1170, 1172 (Fla. 5th DCA 2019); *see also R.F.,* 50 So. 3d at 1246 ("On remand, the [circuit] court ***may*** consider any additional evidence in deciding whether it is in [the child's] best interest to remain in [the foreign state] pending completion of the ICPC process.") (emphases added).

*Reversed and remanded for proceedings consistent with this opinion.*

CONNER and FORST, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***